# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-03-00174-CV

Juliff Gardens, L.L.C., Appellant

v.

Texas Commission on Environmental Quality, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
NO. GN203008, HONORABLE PAUL R. DAVIS, JUDGE PRESIDING

## O P I N I O N

Appellant Juliff Gardens, L.L.C. (Juliff) appeals from a district-court judgment in favor of the Texas Commission on Environmental Quality (the Commission). While Juliff had an application to build a landfill in Brazoria County pending before the Commission, the legislature enacted H.B. 2912, a portion of which is codified as section 361.122 of the Texas Health and Safety Code.[1] The provisions of section 361.122 mandated that Juliff's application be denied. As a result, Juliff amended its application to avoid section 361.122 and subsequently brought this declaratory-

---

[1] *See* Act of May 28, 2001, 77th Leg., R.S., ch. 965, § 9.08, 2001 Tex. Gen. Laws 1933, 1968 (codified at Tex. Health & Safety Code Ann. § 361.122 (West Supp. 2004)).

judgment action seeking a determination that section 361.122 was an unconstitutional local or special law. The district court granted the Commission's motion to dismiss, ruling that the Commission had exclusive or primary jurisdiction to determine the applicability of the statute before Juliff could challenge its constitutionality. In the alternative, the district court granted the Commission's summary-judgment motion, ruling that section 361.122 was not a local or special law.

Juliff now argues that the district court's grant of the Commission's motion to dismiss was improper because Juliff was not required to exhaust its administrative remedies. Juliff also argues that, because the district court determined it was without jurisdiction to entertain Juliff's claim, the grant of summary judgment was an improper advisory opinion. In the alternative, Juliff argues that summary judgment was improper because section 361.122 of the health and safety code is a local or special law. We will reverse the decision of the district court granting the Commission's motion to dismiss, but we will affirm the grant of summary judgment to the Commission.

## BACKGROUND AND PROCEDURE

In 1999, Juliff applied to the Commission for a permit to build and operate a landfill in Brazoria County to dispose of Type IV waste, which includes "brush, construction-demolition waste, and/or rubbish that are free of putrescible and free of household wastes." 30 Tex. Admin. Code § 330.41(e) (2003). On April 17, 2000, the Brazoria County Commissioners Court adopted a resolution opposing Juliff's proposed landfill. On November 14, 2000, after the Commission had declared the permit administratively and technically complete, it made a preliminary decision recommending issuance of the permit.

2

In 2001, while Juliff's permit was still pending, the legislature passed H.B. 2912,[2] which included a provision that became section 361.122 of the Texas Health and Safety Code and provides:

> The commission may not issue a permit for a Type IV landfill if:
>
> (1)  the proposed site is located within 100 feet of a canal that is used as a public drinking water source or for irrigation of crops used for human or animal consumption;
>
> (2)  the proposed site is located in a county with a population of more than 225,000 that is located adjacent to the Gulf of Mexico; and
>
> (3)  prior to final consideration of the application by the commission, the commissioners of the county in which the facility is located have adopted a resolution recommending denial of the application.

Tex. Health & Safety Code Ann. § 361.122 (West Supp. 2004). Because each of section 361.122's provisions applied to Juliff's proposed landfill, Juliff chose to amend its permit application to move the eastern boundary of its proposed landfill to a point more than 100 feet from a privately owned irrigation canal on the site, thereby avoiding the application of section 361.122. Following Juliff's amendment, opponents of the landfill argued that a separate topographical feature on the proposed site was a "canal" for purposes of section 361.122.[3] Juliff requested a contested-case hearing on the

---

[2] *See id.* §§ 1.01-20.03, 2001 Tex. Gen. Laws 1933, 1933-91.

[3] Although Juliff refers to this topographical feature as a "ditch," the Commission has made no final determination as to whether this feature should be characterized as a "ditch" or as a "canal." Because we express no opinion as to its proper characterization, we will use the alternative term "draw" when discussing this topographical feature.

merits of its application, and the Commission referred the matter to the State Office of Administrative Hearings (SOAH). *See* Tex. Water Code Ann. § 5.557(a) (West Supp. 2004).

On August 22, 2002, Juliff filed suit in Travis County district court challenging section 361.122 as an unconstitutional local or special law. *See* Tex. Const. art. III, § 56. Although SOAH had previously decided to conduct "a limited evidentiary hearing to make fact findings [regarding the draw] necessary for determining whether summary disposition [of Juliff's application] might be appropriate under Section 361.122," the SOAH Administrative Law Judges (ALJs) granted Juliff's motion to abate the contested-case hearing on October 8, 2002. In granting Juliff's motion to abate, SOAH stated:

> The ALJs are not convinced that the district court's consideration of the legal arguments presented regarding the constitutionality of Tex. Health & Safety Code § 361.122 is dependent on the fact findings to be made in this administrative proceeding. Under such circumstance, the ALJs see little reason to move forward and expend the resources of the parties and the State if the statute in question may ultimately be found to be unconstitutional and unenforceable.

In the Travis County district court, the Commission filed a motion to dismiss or, alternatively, to abate the proceeding. The Commission argued that it had exclusive jurisdiction or, in the alternative, primary jurisdiction to determine the proper characterization of the draw before the district court could examine the constitutionality of section 361.122. Juliff and the Commission also filed motions for summary judgment, presenting competing arguments as to the constitutionality of section 361.122. The district court granted the Commission's motion to dismiss and, in the alternative, granted summary judgment to the Commission and denied summary judgment to Juliff. This appeal followed.

4

**DISCUSSION**

**Motion to Dismiss**

Juliff claims the district court's grant of the Commission's plea to the jurisdiction was improper because the Commission had neither exclusive nor primary jurisdiction to determine the characterization of the draw before the district court could examine the constitutionality of section 361.122. In order to determine the propriety of the district court's dismissal, we will first determine whether a justiciable controversy existed to enable the district court to entertain Juliff's declaratory-judgment action. If so, we will then determine the validity of the Commission's arguments of exclusive or primary jurisdiction.

*Jurisdiction in declaratory-judgment action*

Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 928 (Tex. 1998); *Friends of Canyon Lake, Inc. v. Guadalupe-Blanco River Auth.*, 96 S.W.3d 519, 525 (Tex. App.—Austin 2002, pet. denied). When reviewing a trial-court order dismissing a cause for want of jurisdiction, we construe the pleadings in favor of the plaintiff and look to the pleader's intent. *Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993).

Juliff argues that the district court had jurisdiction to entertain its declaratory-judgment action, the purpose of which is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations; and it is to be liberally construed and administered." Tex. Civ. Prac. & Rem. Code Ann. § 37.002(b) (West 1997). However, the Uniform Declaratory Judgments Act (UDJA) does not confer jurisdiction on a trial court but makes

5

declaratory judgment available as a remedy for a cause of action already within the court's jurisdiction. *Chenault v. Phillips*, 914 S.W.2d 140, 141 (Tex. 1996); *Reynolds v. Reynolds*, 86 S.W.3d 272, 276 (Tex. App.—Austin 2002, no pet.). The UDJA provides:

> A person interested under a deed, will, written contract, or other writings constituting a contract *or whose rights, status, or other legal relations* are affected by a statute, municipal ordinance, contract, or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status, or other legal relations thereunder.

Tex. Civ. Prac. & Rem. Code Ann. § 37.004(a) (West 1997) (emphasis added). A suit under the UDJA is not confined to cases in which the parties have a cause of action apart from the UDJA itself, but a declaratory judgment is appropriate only if (1) a justiciable controversy exists as to the rights and status of the parties, and (2) the controversy will be resolved by the declaration sought. *Texas Dep't of Pub. Safety v. Moore*, 985 S.W.2d 149, 153 (Tex. App.—Austin 1998, no pet.).

A justiciable controversy need not be a fully ripened cause of action in order to confer jurisdiction upon a court. *Reynolds*, 86 S.W.3d at 276 (citing *Moore*, 985 S.W.2d at 153). Here, Juliff argues that an actual controversy exists or the "ripening seeds" of one exist. *See, e.g.*, *id.*; *City of Austin v. City of Cedar Park*, 953 S.W.2d 424, 430-31 (Tex. App.—Austin 1997, no writ). To confer jurisdiction, the fact situation must manifest the "'ripening seeds of a controversy' . . . even though the differences between the parties as to their legal rights have not reached the state of an actual controversy." *See Moore*, 985 S.W.2d at 153-54 (quoting *Ainsworth v. Oil City Brass Works*, 271 S.W.2d 754, 760 (Tex. Civ. App.—Beaumont 1954, no writ)). Stated differently, in determining ripeness a court should consider (1) the fitness of the issues for judicial review, and (2) the hardship

6

occasioned to a party by the court's denying judicial review. *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001); *Atmos Energy Corp. v. Abbott*, No. 03-03-00105-CV, slip op. at 8, 2004 Tex. App. LEXIS 777, at *12 (Tex. App.—Austin Jan. 29, 2004, no pet. h.).

The Commission argues that whether there is, in fact, a justiciable controversy is dependent on the Commission's determination of the proper characterization of the draw. However, this determination affects only the applicability of section 361.122 to Juliff's amended application; it does not affect the substantive constitutionality of the underlying statute. Juliff claimed in its petition to the district court that "the protestants' position forces Juliff to contend with this unconstitutional law as a central issue in the application process, imposes added expense and burden on Juliff, and introduces the possibility that adverse action will be taken on its application based on the unconstitutional [section 361.122]." In fact, Juliff has incurred the burden of amending its permit application once in order to avoid the application of section 361.122 and has also been confronted with the time and expense of pursuing a contested-case hearing before SOAH, based largely on the potential summary disposition under section 361.122.

Furthermore, the only purpose for the Commission pursuing a determination of the proper characterization of the draw is to decide the applicability of section 361.122. If Juliff succeeds in obtaining a declaration that section 361.122 is unconstitutional, the controversy regarding its application will be resolved and a determination of the proper characterization of the draw will be unnecessary. *See Moore*, 985 S.W.2d at 153. Moreover, the determination of the constitutionality of a statute is unquestionably an issue fit for judicial review—the Commission admits it has no authority to determine the constitutionality of a statute—and refusing to entertain

Juliff's request for declaratory relief would require Juliff to expend resources in defending its permit application against a statute that may, as the ALJs recognized, ultimately be found to be unconstitutional and unenforceable. *See Perry*, 66 S.W.3d at 250. Because the tests for ripeness under both *Moore* and *Perry* have been met, we hold that Juliff has shown that the district court had jurisdiction absent the Commission's claims of exclusive or primary jurisdiction, to which we now turn.

### *Exclusive or primary jurisdiction*

The Commission contends that it has exclusive jurisdiction or, in the alternative, primary jurisdiction to determine the proper characterization of the draw before the district court can examine the constitutionality of section 361.122. Primary jurisdiction is prudential whereas exclusive jurisdiction is jurisdictional. *Subaru of Am., Inc. v. David McDavid Nissan*, 84 S.W.3d 212, 220 (Tex. 2002). The supreme court explained the difference as follows:

> The judicially-created primary jurisdiction doctrine operates to allocate power between courts and agencies when *both* have authority to make initial determinations in a dispute. Trial courts should allow an administrative agency to initially decide an issue when: (1) an agency is typically staffed with experts trained in handling the complex problems in the agency's purview; and (2) great benefit is derived from an agency's uniformly interpreting its laws, rules, and regulations, whereas courts and juries may reach different results under similar fact situations.
>
> . . . .
>
> Conversely, under the exclusive jurisdiction doctrine, the Legislature grants an administrative agency the sole authority to make an initial determination in a dispute. An agency has exclusive jurisdiction "when a pervasive regulatory scheme indicates that Congress intended for the regulatory process to be the exclusive means of remedying the problem to which the regulation is addressed." Whether an agency has exclusive jurisdiction depends on statutory interpretation.

*Id.* at 221 (citations omitted); *see also Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15-18 (Tex. 2000).

The Commission argues that permitting under the Texas Solid Waste Disposal Act, *see* Tex. Health & Safety Code Ann. §§ 361.001-.808 (West 2001 & Supp. 2004), is an administrative function committed exclusively to the Commission. *See Gerst v. Nixon*, 411 S.W.2d 350, 354 (Tex. 1966); *Smith v. Houston Chemical Servs., Inc.*, 872 S.W.2d 252, 258 (Tex. App.—Austin 1994, writ denied); *see also Hooks v. Texas Dep't of Water Res.*, 645 S.W.2d 874, 880 (Tex. App.—Austin 1983, writ ref'd n.r.e.) ("The responsibility for applying the relevant statutory provisions to the facts of a particular case is given in the first instance to the Commission.").

The Commission's reliance on exclusive and primary jurisdiction is misplaced. In order for either exclusive or primary jurisdiction to apply, the Commission must have authority to determine the controversy at issue. *See Subaru*, 84 S.W.3d at 221. Although the legislature has empowered the Commission with the permitting function, Juliff's claim regards the constitutionality of section 361.122 and does not affect the Commission's administrative role.[4] Although the Commission's staff is trained in dealing with permitting matters, it is not empowered to determine the constitutionality of statutes. Similarly, concerns for uniformity are not implicated because the issue here involves a determination of the constitutionality of a statute and in no way implicates the Commission's permitting process or the application of a Commission rule or regulation. *See id.* Here, the Commission has no statutory authority to determine the constitutionality of section

---

[4] Juliff's request for declaratory relief concerns *only* the constitutionality of section 361.122 and does not ask the district court to make any determination regarding the proper characterization of the draw.

9

361.122, and a constitutional determination by the district court does not infringe on the Commission's permitting power.

The Commission also cites *Texas Education Agency v. Cypress-Fairbanks Independent School District*, 830 S.W.2d 88 (Tex. 1992), for the proposition that plaintiffs must exhaust administrative remedies, even before bringing claims based on constitutional or federal statutory grounds. In *Cypress-Fairbanks*, school teachers appealed to the Commissioner of Education following adverse employment decisions. *Id.* at 89. Cypress-Fairbanks sought injunctive relief regarding the standard of review to be applied by the Commissioner of Education. *Id.* at 90. In affirming the district court's dismissal of Cypress-Fairbanks's suit for want of jurisdiction, the supreme court stated that a district court can correct agency error only after exhaustion of administrative remedies. *Id.* With regard to the constitutional and federal statutory claims also raised by the teachers, the supreme court stated that "[t]he Commissioner is within his authority to consider the employees' claims at least for some purposes, even if he cannot finally adjudicate them or grant full relief." *Id.* at 91. Because the supreme court reasoned that the Commissioner could "consider whether the school districts' actions were invalid because they violated federal law," it affirmed the district court's dismissal for want of jurisdiction. *Id.*

The facts at hand are easily distinguishable from those in *Cypress-Fairbanks*. An administrative agency may exercise only those powers the law, in clear and express statutory language, confers upon it. *Subaru*, 84 S.W.3d at 220. In *Cypress-Fairbanks*, the Commissioner of Education was empowered to at least consider whether the actions complained of by the teachers

10

were unconstitutional or violated federal statutes. Here, the Commission has no power, either express or implied, to determine the constitutionality of statutes.

"Where [an] issue is one inherently judicial in nature . . . , the courts are not ousted from jurisdiction unless the legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body." *Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 415 (Tex. 1961). No such grant of exclusive power exists here, and the Commission admits it is not claiming jurisdiction to determine the constitutionality of section 361.122. Regarding primary jurisdiction, although the Commission is empowered to consider the factual underpinnings of Juliff's application, this in no way affects the district court's ability to determine the constitutionality of section 361.122, a function the Commission admits it cannot perform. We find that the Commission has neither exclusive nor primary jurisdiction to determine the constitutionality of section 361.122 and that Juliff was not required to allow the Commission to ultimately determine the applicability of section 361.122 before challenging the statute's constitutionality. We therefore hold that the district court erred in granting the Commission's motion to dismiss.

**Motion for Summary Judgment**

*Propriety of ruling on merits of motions for summary judgment*

Juliff next argues that, because the district court determined it was without jurisdiction to entertain Juliff's claim, the grant of summary judgment was an improper advisory opinion. *See* Tex. Const. art. II, § 1; *Texas Ass'n of Bus.*, 852 S.W.2d at 444 (separation-of-powers doctrine prohibits courts from issuing advisory opinions). To support this argument, Juliff cites numerous cases for the proposition that a trial court should refrain from ruling on the merits of the

11

case when it lacks jurisdiction. *See, e.g.*, *Subaru*, 84 S.W.3d at 221; *Attorney Gen. v. Sailer*, 871 S.W.2d 257, 258 (Tex. App.—Houston [14th Dist.] 1994, writ denied).

This proposition is not applicable to the situation before us. The district court's determination that it did not have jurisdiction was in error, and the structure of the district court's final judgment indicates that the district court intended that its summary-judgment ruling be effective should its jurisdictional ruling be reversed.[5] The district court granted the Commission's motion to dismiss by stating, "IT IS THEREFORE ORDERED, ADJUDGED, AND DECREED that all of the Plaintiff's claims are DISMISSED and all requested relief not expressly granted is denied without prejudice." This was immediately followed by, "ALTERNATIVELY, IT IS ORDERED, ADJUDGED, AND DECREED that: . . . The Plaintiff's Motion for Summary Judgment is DENIED, [and] that the Defendants' Cross-Motion for Summary Judgment is GRANTED." Because the district court had jurisdiction to rule on the competing motions for summary judgment—despite its alternative jurisdictional ruling to the contrary—and because the issue before the court was ripe for review, we hold that the district court's decision to reach the merits of the competing motions for

---

[5] Although the procedural posture of this case is somewhat unusual, it is not unique. *See, e.g.*, *Camarena v. Texas Employment Comm'n*, 754 S.W.2d 149, 151 (Tex. 1988) (trial court ruled sovereign immunity barred award of attorney's fees and, in the alternative, determined specific amount of attorney's fees it would have awarded); *Cozby v. City of Waco*, 110 S.W.3d 32, 34 (Tex. App.—Waco 2002, no pet.) (trial court granted plea to the jurisdiction and, "in the alternative," motion for summary judgment); *Texas Gen. Indem. Co. v. Texas Workers' Comp. Comm'n*, 36 S.W.3d 635, 639 (Tex. App.—Austin 2000, no pet.) (following dismissal for lack of jurisdiction, trial court conditionally ruled on merits of competing motions for summary judgment "in the event it was held to be in error for dismissing the cause"). Because this is a declaratory-judgment action involving a pure question of law—the determination of the constitutionality of a statute—we are inclined to address the issue for purposes of judicial efficiency and economy.

summary judgment was not in error and that the decision was not an advisory opinion.**[6]** We turn now to the validity of the district court's summary-judgment decision.

### *Merits of district court's summary-judgment ruling*

Juliff argues that the district court erred in granting the Commission's motion for summary judgment and denying its own motion because section 361.122 of the Texas Health and Safety Code is, in fact, a local or special law in violation of the Texas Constitution. *See* Tex. Const. art. III, § 56. When both parties move for summary judgment, each party must carry its own burden as the movant. *Guynes v. Galveston County*, 861 S.W.2d 861, 862 (Tex. 1993); *Jun v. Lloyds & Other Various Insurers*, 37 S.W.3d 59, 62 (Tex. App.—Austin 2000, pet. denied). When the district court grants one party's motion and denies the other's, the reviewing court should determine all questions presented and render the judgment that the court below should have rendered. *Commissioners Court v. Agan*, 940 S.W.2d 77, 81 (Tex. 1997); *City of Fort Worth v. Cornyn*, 86 S.W.3d 320, 322 (Tex. App.—Austin 2002, no pet.). The propriety of summary judgment is a question of law; therefore, we review the trial court's decision de novo. *Texas Dep't of Ins. v. American Home Assurance Co.*, 998 S.W.2d 344, 347 (Tex. App.—Austin 1999, no pet.); *see Natividad v. Alexsis, Inc.*, 875 S.W.2d 695, 699 (Tex. 1994). In the competing motions for summary

---

**[6]** Our decision is guided by *Lone Star Gas Co. v. Railroad Commission*, 767 S.W.2d 709, 710 (Tex. 1989), in which the supreme court directed the courts of appeals to "address every issue raised and necessary to final disposition of the appeal," and, when reversing the judgment of a lower court, "proceed to render such judgment or decree as the court below should have rendered, except when it is necessary to remand to the court below for further proceedings." *See also* Tex. R. App. P. 43.3, 47.1.

judgment before us now, the Commission and Juliff argue opposite sides of the same issue: whether section 361.122 is an unconstitutional local or special law.

The Texas Constitution enumerates thirty instances where the legislature may not authorize a local or special law. Tex. Const. art. III, § 56(a)(1)-(30). The Texas Constitution then states: "In addition to those laws described by Subsection (a) of this section in all other cases where a general law can be made applicable, no local or special law shall be enacted . . . ." *Id.* § 56(b).

A local law is one limited to a specific geographic region of the state, while a special law is limited to a particular class of persons distinguished by some characteristic other than geography. *Maple Run at Austin Mun. Util. Dist. v. Monaghan*, 931 S.W.2d 941, 945 (Tex. 1996). However, a law is not a prohibited local law merely because it applies only in a limited geographical area. *Id.* The supreme court recognized the legislature's broad authority to make classifications for legislative purposes. *Id.*; *see Miller v. El Paso County*, 150 S.W.2d 1000, 1001 (Tex. 1941). However, where a law is limited to a particular class or affects only the inhabitants of a particular locality, "the classification must be broad enough to include a substantial class and must be based on characteristics legitimately distinguishing such class from others with respect to the public purpose sought to be accomplished by the proposed legislation." *Maple Run*, 931 S.W.2d at 945 (citing *Miller*, 150 S.W.2d at 1001-02). "The primary and ultimate test of whether a law is general or special is whether there is a reasonable basis for the classification made by the law, and whether the law operates equally on all within the class." *Id.* (quoting *Rodriguez v. Gonzales*, 227 S.W.2d 791, 793 (Tex. 1950)); *Miller*, 150 S.W.2d at 1001-02.

14

In determining the constitutionality of a statute, we begin with a presumption of validity. *Smith v. Davis*, 426 S.W.2d 827, 831 (Tex. 1968). We presume that the legislature has not acted unreasonably or arbitrarily, and a mere difference of opinion, where reasonable minds could differ, is not a sufficient basis for striking down legislation as arbitrary or unreasonable. *Id.* "There is a strong presumption that a legislature understands and correctly appreciates the needs of its own people, that its laws are directed to problems made manifest by experience, and that its discriminations are based upon adequate grounds." *Texas Nat'l Guard Armory Bd. v. McCraw*, 126 S.W.2d 627, 634 (Tex. 1939).

Here, the Commission and Juliff have presented competing arguments as to the constitutionality of section 361.122, and both parties rely on this section's legislative history. In 2001, the legislature considered H.B. 2912, which addressed sunset issues for the Commission and amended both the water code and the health and safety code. *See* Act of May 28, 2001, 77th Leg., R.S., ch. 965, §§ 1.01-20.03, 2001 Tex. Gen. Laws 1933, 1933-91. The general manager of the Lower Neches Valley Authority informed Senator Bernsen's staff that the Lower Neches Valley Authority cancelled plans to construct a water treatment plant near an irrigation canal in Senator Bernsen's district when it learned that leachate from a nearby abandoned landfill threatened to contaminate the canal. Senator Bernsen subsequently introduced an amendment to H.B. 2912 that would prohibit the Commission from issuing a permit to certain types of landfills "within 2,500 feet of a freshwater reservoir, canal, or other surface water conveyance system that reasonably may be used to transport fresh water for agricultural, domestic, or drinking purposes in counties in which the County Commissioner's Court has voted unanimously to oppose the facility."

15

Senator Bernsen's amendment was discussed by the Senate Committee on Natural Resources. Representatives from the Commission informed Senator Brown, the chairman of the committee, that Senator Bernsen's amendment would "make it difficult for applicants to find and acquire permissable [sic] locations for new landfills in East Texas." Senator Brown eventually proposed his own amendment that was narrower than Senator Bernsen's: it was limited to Type IV landfills in populous coastal counties, reduced the setback from 2,500 feet to 100 feet, and applied only to landfills near canals and not other waterways. Senator Brown's amendment was considered and adopted by the legislature as part of H.B. 2912. *See id.* § 9.08, 2001 Tex. Gen. Laws 1933, 1968 (codified at Tex. Health & Safety Code Ann. § 361.122 (West Supp. 2004)).

Both parties discuss the legislative history of H.B. 2912 in their arguments concerning the constitutionality of section 361.122.[7] Juliff argues that section 361.122 is a local or special law because it specifically targets Juliff's landfill, and the fact that it could apply to future landfills is a legislative effort to disguise the true intent of the statute. *See Miller*, 150 S.W.2d at 1002 (classification "must not be a mere arbitrary device resorted to for the purpose of giving what is, in fact, a local law, the appearance of a general law"). Specifically, Juliff points to excerpts from a Senate floor discussion between Senator Brown and Senator Barrientos as evidence that Brown was attempting to specifically "target" the Juliff landfill. However, a review of the transcript of the Senate floor discussion indicates otherwise:

---

[7] In determining whether a statute is a local or special law, it is appropriate to examine the statute's legislative history. *Suburban Util. Corp. v. State*, 553 S.W.2d 396, 399 (Tex. Civ. App.—Houston [1st Dist.] 1977, writ ref'd n.r.e.).

16

Brown:      Thank you, Chair, Members.  This amendment is a very narrowly drawn amendment that Senator Bernsen and I have been working on, and it was discussed in committee and then left pending in committee, so that it could be properly—it could be redrawn.  This applies—the language is targeted to affect the [Commission's] ability to issue a permit for a landfill . . . .  This, this is in regard to a proposed landfill that the Houston/Galveston Area Council is opposed to that the Brazoria County Commissioners are opposed to by resolution.  It would be the tallest structure in Brazoria County, and the applicant has a bad business history.

* * * *

Barrientos: Senator, this looks like a good amendment.  Just one question on your Item No. 2, permit not be issued if the proposed site is located within 100 feet of a canal that is used as a public drinking water source.  So if it was 101 feet it could be given, right?

Brown:      Well, it's not, the converse is not true.  It doesn't say, if it is 101 you must approve it.  It just says, they cannot approve it if it's within 100.

Barrientos: But technically . . .

Brown:      It's got to have those other provisions too.

Barrientos: What other provisions?

Brown:      Well, that follow.  And it must be in a county that's situated adjacent to the Gulf of Mexico, of a population of more than 225[,000], and . . .

Barrientos: Okay, so you're trying to specify a certain . . .

Brown:      . . . target . . .

Barrientos: Ok that's fine.  I just thought I'd point that out to you.  That's like from here to me to you how far that landfill would be, technically?

Brown:      That's about just a long put[t], Senator.

Barrientos: Just thought I'd . . . It's a nice quail shot, too.

Chair:      Senator Harris on the amendment?

17

| | |
|---|---|
| Harris: | It's acceptable, Mr. President. |
| Chair: | Senator Brown sends up Floor Amendment No. 24 and moves its adoption. It is acceptable to Senator Harris. Is there objection to the adoption of the Amendment? Chair hears none. The amendment is adopted. |

Juliff argues that this discussion is evidence that section 361.122 is a local or special law because it was specifically targeted at Juliff's landfill. Although Brown stated that the amendment was "in response" to Juliff's proposed landfill, the mere fact that issues in Senator Bernsen's district and in Senator Brown's district were precipitating causes of what became section 361.122 does not render it a local or special law.[8] When reviewing a statute to determine whether it is an unconstitutional local or special law, we review the reasonableness of the statute's classifications, *see Maple Run*, 931 S.W.2d at 945, not the precipitating forces that led to its enactment. Specific events have led to numerous statutes that were enacted as laws of general applicability. *See, e.g.*, Tex. Gov't Code Ann. §§ 411.351-.358 (West Supp. 2004) (Statewide America's Missing: Broadcast Emergency Response (AMBER) Alert System for Abducted Children); 18 U.S.C.A. § 921-31 (West 2000 & Supp. 2003) (Brady Handgun Violence Prevention Act). The mere fact that Juliff's proposed landfill, and the subsequent community opposition to the landfill, may have spurred Senator Brown to sponsor the amendment that became section 361.122 does not render this section a prohibited local or special law.

---

[8] Although Juliff argues that Senator Brown's use of the word "target" in response to Senator Barrientos's questions is evidence that Senator Brown's amendment was specifically directed at Juliff's landfill, our review of the entire transcript leads us to believe that Senator Brown's use of the word "target" referred to the specification of 100 feet, not Juliff's landfill.

Juliff also argues that the classifications in section 361.122 are not reasonable because limitations on the Commission's ability to approve landfill applications should apply statewide. Specifically, Juliff argues the classifications are unreasonable because they apply to (1) Type IV landfills, not Type I landfills; (2) populous counties, not all counties; (3) coastal counties, not all counties; (4) canals, not other waterways; and (5) counties in which the commissioners have adopted a resolution opposing the landfill, not all counties.

The Commission responds that section 361.122 is a law of general applicability that, through reasonable geographic classifications, creates an open class and applies to five populous counties that are adjacent to the Gulf of Mexico. The Commission responds to Juliff's arguments by reasoning that, because Type IV landfills are less regulated and subject to less-stringent requirements than Type I landfills, a particularized statute directed at Type IV landfills is justified. Second, the Commission argues that it is reasonable to focus on populous counties because landfills are situated close to population centers. Third, the Commission justifies distinguishing coastal counties because (i) coastal counties contain vital habitats for aquatic resources that support commercial and recreational fishing; (ii) landfills in coastal counties are close to these sensitive habitats, whereas pollutants from non-coastal counties will be "diluted and attenuated" if they reach these sensitive habits at all; (iii) unlike other counties, coastal counties are susceptible to a wide variety of geological and climatic conditions, such as hurricanes, tidal surges, erosion, active surface faulting, and subsidence, thereby justifying geographically targeted regulation; (iv) coastal counties are positioned over a shallow aquifer that is a "large, leaky artesian aquifer system" and are therefore particularly vulnerable to landfill waste; and (v) both the legislature and case law support the

19

proposition that protecting and promoting aquatic, natural, and recreational resources in coastal counties is a matter of statewide interest. *See* Tex. Water Code Ann. §§ 5.602-.603 (West Supp. 2004); *County of Cameron v. Wilson*, 326 S.W.2d 162, 166 (Tex. 1959); *Stephenson v. Wood*, 34 S.W.2d 246, 248-49 (Tex. 1931). Fourth, the Commission argues that the hydrological differences between canals and other waterways make canals particularly susceptible to pollution from landfills. Unlike streams or rivers, into which tributaries continually add water, canals are characterized by low pressure, low flow, and low circulation, and are isolated systems that are open at one end and closed elsewhere. The Commission argues that these differences affect the ability of water in canals to withstand and recover from the effects of pollution. Finally, the Commission argues that, because counties are partners in the regulatory process, it is reasonable for the legislature to afford commissioners courts a voice in whether a landfill application should be granted.

We find that the Commission's justifications for the classifications within section 361.122 are reasonable, and although Juliff has presented arguments attempting to rebut some of the Commission's justifications, Juliff's arguments are insufficient to overcome the presumption of validity. *See Davis*, 426 S.W.2d at 831 (mere difference of opinion, where reasonable minds could differ, is not sufficient basis for striking down legislation as arbitrary or unreasonable). We agree with the Commission that, because the classifications within the section are reasonable, and because the law operates equally on all within the class, section 361.122 is not a prohibited local law. *See Maple Run*, 931 S.W.2d at 945; *Miller*, 150 S.W.2d at 1001-02. We hold that section 361.122 is not a prohibited local or special law, and therefore affirm the district court's grant of the Commission's motion for summary judgment and its denial of Juliff's motion for summary judgment.

20

**CONCLUSION**

Because the Commission had neither exclusive nor primary jurisdiction to consider the constitutionality of section 361.122, and because Juliff has shown a justiciable controversy exists that is sufficient to invoke the jurisdiction of the district court, we reverse the district court's dismissal of the cause. The district court had jurisdiction to consider the merits of the competing motions for summary judgment. We therefore overrule Juliff's contention that the district court's grant of summary judgment to the Commission was an impermissible advisory opinion. Finally, because section 361.122 of the Texas Health and Safety Code is not an impermissible local or special law, we affirm the district court's grant of the Commission's motion for summary judgment and its denial of Juliff's motion for summary judgment.

_____

Mack Kidd, Justice

Before Justices Kidd, Puryear and Pemberton

Affirmed in Part; Reversed in Part

Filed: March 4, 2004