# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

NO. 03-08-00077-CV

Carl Mitz, Dena Corbin, Randy Riedinger, Brady George, Gary Barnes and Tony Greaves,
Appellants

v.

Texas State Board of Veterinary Medical Examiners; Robert L. Lastovica, DVM, in his
official capacity as President of the Texas State Board of Veterinary Medical Examiners;
Bud E. Alldredge, Jr., DVM, in his official capacity as Vice President of the Texas
State Board of Veterinary Medical Examiners; Patrick M. Allen, DVM, in his official
capacity as Secretary of the Texas State Board of Veterinary Medical Examiners;
Janie Allen Carpenter, DVM, David Wayne Heflin, DVM, Paul Martinez,
Dawn E. Reveley, Cynthia Diaz, and Guy W. Johnsen, DVM, in their official capacities as
members of the Texas State Board of Veterinary Medical Examiners, Appellees

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 419TH JUDICIAL DISTRICT
NO. D-1-GN-07-002707, HONORABLE LORA J. LIVINGSTON, JUDGE PRESIDING

## O P I N I O N

Appellants, a group comprised of four non-veterinarian equine dental practitioners and two horse breeders who employ such practitioners to service their horses,[1] sought a declaratory judgment and injunctive relief against the Texas State Board of Veterinary Medical Examiners, alleging that the Board's regulation of equine dentistry under the Veterinary Licensing Act is unconstitutional. *See* Tex. Occ. Code Ann. §§ 801.001-.509 (West 2004 & Supp. 2008). In this

---

[1] For convenience, we will refer to the practitioners and breeders collectively as "Appellants," except where it is necessary to distinguish between the two.

interlocutory appeal, Appellants contend that the trial court erred in granting the Board's plea to the jurisdiction and abating the case until the practitioners have exhausted their administrative remedies. Because we determine that the practitioners are not required to exhaust administrative remedies before bringing their constitutional claims, we will reverse the judgment of the trial court.

## BACKGROUND

The practitioners provide various services to horse owners and breeders in Texas, including teeth extraction and "floating," which involves using a file to make teeth level and ensure proper alignment. Prior to 2007, the Board allowed equine teeth floating and extraction to be performed by non-veterinarians such as the practitioners. However, in early 2007, the Board determined that these services constituted the practice of veterinary dentistry under the Act, and therefore could only be performed by a licensed veterinarian.[2] *See id.* § 801.002(7) (West 2004) (defining "veterinary medicine" to include dentistry), § 801.251 (West 2004) (prohibiting non-veterinarians from practicing veterinary medicine).

In early 2007, the Board mailed letters to each of the practitioners, demanding that they cease and desist the practice of veterinary medicine without a license. When the practitioners refused to sign the voluntary cease-and-desist orders included in these letters, the Board referred the

---

[2] In their response to the Board's plea to the jurisdiction, Appellants cited to the Board's July 2007 newsletter, stating that the practitioners were "advised via the Board's newsletter that it planned to commence administrative proceedings against them for 'unauthorized practice of veterinary medicine.'" The Board does not appear to dispute Appellants' characterization of the policy change regarding equine teeth floating and extraction, stating in its brief, "In early 2007, pursuant to its authority under the Act, the Veterinary Board began sending letters to known unlicensed practitioners of equine dentistry, including the appellants, requesting that they voluntarily stop practicing veterinary dentistry without a license."

2

case to an informal conference.[3] On August 28, 2007, prior to the informal conference, Appellants filed suit for declaratory and injunctive relief, alleging that those provisions of the Act prohibiting non-veterinarians from performing equine dental services are unconstitutional. Appellants requested a declaratory judgment that the Act violated the due course of law,[4] monopoly prohibition,[5] and equal protection[6] provisions of the Texas Constitution, and sought temporary and permanent injunctions preventing the Board from enforcing those portions of the Act that would prohibit non-veterinarian equine dentists from performing equine dental services.

---

[3] Under the Board's administrative rules, a voluntary cease-and-desist order is the first step in taking action against a party that may have engaged in the unlicensed practice of veterinary medicine. *See* 22 Tex. Admin. Code § 575.40(c)(1). If the respondent chooses not to sign the initial order, the complaint is referred to an informal conference, where the conference committee may propose a second cease-and-desist order, including any settlement terms reached. *Id.* § 575.40(d)(1). If the respondent chooses not to sign the second order, the complaint is referred to the State Office of Administrative Hearings (SOAH) for a contested case proceeding. *Id.* § 575.40(d)(2). Following the contested case proceeding and the issuance of a proposal for decision by an administrative law judge, the Board makes its final decision and takes such action as appropriate. *Id.* The respondent may appeal this decision by filing a petition for judicial review in district court. Tex. Occ. Code Ann. § 801.457 (West 2004).

[4] Appellants contend that the Act violates the due course of law provision, both facially and as applied, because (1) it arbitrarily allows licensed veterinarians, but not equine dental practitioners, to provide equine dental care and (2) the provisions regulating the practice of equine dentistry were enacted in contravention of sections 318.001-.003 of the government code, which set forth certain criteria that must be considered in regulating occupations. *See* Tex. Const. art. I, § 19; Tex. Gov't Code Ann. §§ 318.001-.003 (West 2005).

[5] Appellants contend that the Act confers an unconstitutional monopoly on licensed veterinarians in the provision of equine dental services. *See* Tex. Const. art. I, § 26.

[6] Appellants argue that there is no reasonable basis for prohibiting equine dental practitioners from providing their services while allowing laypeople to provide similar services, such as horseshoeing, branding, birthing, dehorning, tail docking, castration, and artificial insemination, or while allowing the non-veterinarian owner of an animal or the owner's non-veterinarian employee to perform equine dental services. *See id.* art. I, § 3.

The Board filed a plea to the jurisdiction, seeking dismissal on the grounds of ripeness, standing, failure to include necessary parties, exclusive agency jurisdiction, primary agency jurisdiction, and failure to exhaust administrative remedies. On October 30, 2007, after the Board's plea to the jurisdiction was filed but before it was heard by the trial court, the practitioners participated in an informal conference with the Board. The parties were unable to agree to a settlement, and on November 30, 2007, the Board again issued voluntary cease-and-desist orders, each accompanied by a letter stating, "After reviewing the facts, the Board Secretary, with the advice of the Committee, determined your client is in violation of the Veterinary Practice Act by practicing veterinary medicine without a license." The letter further stated that the case would be referred to SOAH if the cease-and-desist orders were not signed by January 2, 2008. The practitioners did not sign the cease-and-desist orders.

On January 2, 2008, the trial court held a hearing on the Board's plea to the jurisdiction. The trial court ultimately granted the plea on the grounds of failure to exhaust administrative remedies and primary agency jurisdiction, abating the case until the completion of contested case proceedings at SOAH. Appellants brought this interlocutory appeal from the trial court's order granting the Board's plea to the jurisdiction. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8) (West 2008).

**STANDARD OF REVIEW**

Because this is an appeal from a plea to the jurisdiction, "we will review the face of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the pleadings, if liberally construed, favored jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855

(Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). If the pleadings do not affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Id.* at 227. Unless a pled jurisdictional fact is challenged and conclusively negated, it must be taken as true for purposes of determining subject-matter jurisdiction. *City of Austin v. Leggett*, 257 S.W.3d 456, 462 (Tex. App.—Austin 2008, pet. denied). In reviewing a plea to the jurisdiction, an appellate court does not look to the merits of the case but considers only the pleadings and evidence relevant to the jurisdictional inquiry. *Miranda*, 133 S.W.3d at 227.

## DISCUSSION

*The Board's Motion to Dismiss*

As a preliminary matter, the Board argues in its brief that this appeal should be dismissed as an improper interlocutory appeal from a non-appealable order. The Board previously filed a motion to dismiss, which this Court overruled on the basis that any party may appeal from an order granting or denying a governmental entity's plea to the jurisdiction, as Appellants have done in the present case. *See* Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(8). For that same reason, we shall again decline the Board's request to dismiss this appeal.

5

*Agency Jurisdiction & Exhaustion of Administrative Remedies*

Appellants argue that the trial court erred in abating their declaratory-judgment action until administrative proceedings have concluded because the Board has neither exclusive nor primary jurisdiction to resolve their constitutional challenges.

Texas district courts are courts of general jurisdiction and are presumed to have subject-matter jurisdiction over all claims unless a contrary showing is made. *Dubai Petroleum Co. v. Kazi*, 12 S.W.3d 71, 75 (Tex. 2000). There is no such presumption, however, for the authority of administrative agencies to resolve disputes. *Subaru of Am., Inc. v. David McDavid Nissan, Inc.*, 84 S.W.3d 212, 220 (Tex. 2002). "Rather, they may exercise only those powers the law, in clear and express statutory language, confers upon them." *Id.*

An agency has primary jurisdiction over a dispute when both the agency and the courts have authority to make an initial determination, and the trial court defers to the agency to decide the issue because (1) the agency has expertise in handling the complex problems in the agency's purview and (2) great benefit is derived from the agency uniformly interpreting its laws, rules, and regulations. *Id.* at 221. "If the primary jurisdiction doctrine requires a trial court to defer to an agency to make an initial determination, the court should abate the lawsuit and suspend finally adjudicating the claim until the agency has an opportunity to act on the matter." *Id.* In the present case, the trial court found that the Board had primary jurisdiction over the dispute presented by Appellants' declaratory-judgment action and abated the case accordingly.

An administrative agency has exclusive jurisdiction when the legislature has granted the agency the sole authority to make an initial determination in a dispute. *See Cash Am. Int'l Inc. v. Bennett*, 35 S.W.3d 12, 15 (Tex. 2000). In cases where an agency has exclusive jurisdiction,

6

the trial court must dismiss the claims without prejudice until the party has exhausted all administrative remedies. *Subaru*, 84 S.W.3d at 221. The Board contends that it has exclusive agency jurisdiction in this case, and therefore the trial court should have dismissed Appellants' claims, rather than abating the case. Alternatively, the Board argues that the trial court did not err in abating the case because the Board has primary agency jurisdiction over this dispute.

In bringing their declaratory-judgment action, Appellants challenge the constitutionality of portions of the Veterinary Licensing Act. The Board has jurisdiction to administer the Act, including making determinations regarding whether the Act has been violated. *See* Tex. Occ. Code Ann. § 801.151 (West 2004) ("The board may adopt rules as necessary to administer this chapter."), § 801.456 (West 2004) ("[T]he board by order may determine that: (1) a violation has occurred and impose an administrative penalty; or (2) a violation did not occur."). However, there is no indication in the statute that the legislature intended to authorize the Board to resolve disputes regarding the constitutionality of the Act. *See Texas State Bd. of Pharm. v. Walgreen Tex. Co.*, 520 S.W.2d 845 (Tex. App.—Austin 1975, writ ref'd n.r.e.) ("Administrative agencies have no power to determine the constitutionality of statutes."). The Board does not contend that it has the power to determine the constitutionality of the Act, but instead argues that Appellants' claims fall within the Board's exclusive jurisdiction because it is authorized to make determinations regarding whether the Act has been violated.

Given the circumstances of the present case, we find *Juliff Gardens, L.L.C. v. Texas Commission on Environmental Quality*, 131 S.W.3d 271, 277 (Tex. App.—Austin 2004, no pet.), to be controlling. In that case, Juliff sought a declaratory judgment that a particular statute, which potentially prevented Juliff's landfill-permit application from being granted by the

7

Commission, was unconstitutional. *Id.* at 275-76. The Commission filed a plea to the jurisdiction, arguing that there had not yet been an administrative determination of whether the statute in question applied to Juliff's proposed landfill site, and that it had either exclusive or primary agency jurisdiction to determine the applicability of the statute before Juliff could bring a constitutional challenge. *Id.* at 276. While Juliff had not yet exhausted its administrative remedies, this Court held that there was no requirement to do so, because any agency determination of whether the statute applied to Juliff's proposed landfill site "affects only the applicability of [the statute] to Juliff's amended application; it does not affect the substantive constitutionality of the underlying statute." *Id.* at 277. This Court went on to state:

> Moreover, the determination of the constitutionality of a statute is unquestionably an issue fit for judicial review—the Commission admits it has no authority to determine the constitutionality of a statute—and refusing to entertain Juliff's request for declaratory relief would require Juliff to expend resources in defending its permit application against a statute that may . . . ultimately be found to be unconstitutional and unenforceable.

*Id.* at 278. This Court further held that while "the Commission is empowered to consider the underpinnings of Juliff's application, this in no way affects the district court's ability to determine the constitutionality" of the statute. *Id.* at 279.

Like the plaintiff in *Juliff Gardens*, Appellants bring only a constitutional challenge to the Veterinary Licensing Act and do not seek a determination from the trial court regarding whether their professional activities fall outside the scope of the Act. *See id.* at 279 n.4 (observing that "Juliff's request for declaratory relief concerns *only* the constitutionality of [the statute] and does not ask the district court to make any determination regarding" the applicability of the statute to Juliff's proposed landfill site). In light of *Juliff Gardens*, we hold that the Board has neither

8

exclusive nor primary jurisdiction to determine the constitutionality of the relevant portions of the Act and that therefore Appellants were not required to allow the Board to reach a final decision on the applicability of the Act to the practitioners before bringing a constitutional challenge. While the Board has agency jurisdiction to determine whether the Act has been violated, "this in no way affects the district court's ability to determine the constitutionality" of the Act. *Id.* at 279; *see also Walgreen*, 520 S.W.2d at 848 ("[T]here is no sound reason for forcing a litigant through the administrative process when in good faith he is advancing a substantial complaint that the statute that he is charged with violating is unconstitutional.").

While the Board argues that resolution of Appellants' claim requires the consideration of specific facts within agency expertise that have not yet been developed, we disagree. Where a party's claim turns entirely on an inherently judicial question, there is no need for the development of additional facts and therefore the primary-jurisdiction doctrine does not apply. *Texas Dep't of Ins. v. Reconveyance Servs., Inc.*, 240 S.W.3d 418, 433 (Tex. App.—Austin 2007, pet. filed); *see also Gregg v. Delhi-Taylor Oil Corp.*, 344 S.W.2d 411, 415 (Tex. 1961) ("Where the issue is one inherently judicial in nature . . . , the courts are not ousted from jurisdiction unless the Legislature, by a valid statute, has explicitly granted exclusive jurisdiction to the administrative body."). Pure questions of law that do not involve "embedded fact issues that counsel deference to agency proceedings" must be decided by the courts. *Reconveyance Servs.*, 240 S.W.3d at 433.

Appellants' claim under the Uniform Declaratory Judgments Act (UDJA)[7] falls squarely within the class of claims that this Court has previously determined constitute purely legal inquiries that do not require the development of additional facts. *Compare Reconveyance Servs.*,

---

[7] *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 37.001-.011 (West 2008).

9

240 S.W.3d at 433 (holding that UDJA claim regarding whether appellant's services were prohibited by insurance code involved purely legal question, despite lack of final agency determination that appellant was in violation of statute), *Juliff Gardens*, 131 S.W.3d at 279 (holding that UDJA claim was inherently judicial in nature, where Juliff sought declaration regarding only the constitutionality of the statute and did not seek determination regarding whether statute applied to its particular permit application, which had not yet been granted or denied by agency), *and City of Waco v. Texas Natural Res. Conservation Comm'n*, 83 S.W.3d 169, 177 (Tex. App.—Austin 2002, pet. denied) (holding that claim involved pure question of law where City sought declaration that agency's new permit-issuing process violated state law, despite fact that agency had not yet issued any particular permit under policy), *with Atmos Energy*, 127 S.W.3d at 857 (appellants did not present pure question of law where they primarily sought declaration that their activities were not subject to statute, and brought constitutional challenge only in the alternative), *and Texas Court Reporters Certification Bd. v. Esquire Deposition Servs., L.L.C.*, 240 S.W.3d 79, 93 (Tex. App.—Austin 2007, no pet.) (claim required fact-specific determinations within agency's jurisdiction where appellants did not bring constitutional challenge, but sought declaration that volume discount contracts did not violate statute prohibiting contracts that undermine impartiality, give advantage to any party, or constitute dishonesty). Just as it was not necessary to determine how the agency would apply the challenged statute or policy in a specific case before resolving a purely legal question regarding such statute or policy in *Juliff Gardens*, *Reconveyance Services*, or *City of Waco*, it is not necessary here to reach a final agency determination that the practitioners violated the Veterinary Licensing Act in order to consider whether the Act itself is unconstitutional. As a result, we hold that the Board does not have

primary or exclusive agency jurisdiction over the dispute at issue, and that the trial court erred in abating this case for the exhaustion of administrative remedies.

*Ripeness and Standing*

The Board argues on appeal that the trial court also lacked subject-matter jurisdiction over this suit on the grounds of standing and ripeness, and that the trial court erred in not granting the plea to the jurisdiction on these grounds as well. While the Board did not appeal the trial court's order on its plea to the jurisdiction, we must address its jurisdictional arguments because subject-matter jurisdiction is essential to the authority of a court to decide a case and cannot be waived by the parties. *See Texas Ass'n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 443-44 (Tex. 1993).

Ripeness and standing are related doctrines of justiciability, as "each is a threshold question that implicates subject matter jurisdiction and each emphasizes the necessity of a concrete injury for a justiciable claim to be presented." *Esquire*, 240 S.W.3d at 92. The doctrine of ripeness seeks to conserve judicial time and resources for real and current controversies, rather than hypothetical or remote disputes. *City of Waco*, 83 S.W.3d at 175. An opinion issued in a case that is not ripe would address only a hypothetical injury, rather than remedying actual or imminent harm. *Id.* In determining whether a case is ripe, a court must consider (1) the fitness of the issues for judicial decision, and (2) the hardship to the parties of witholding judicial review. *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001).

The Board argues that this case is not ripe because the statute in question has not yet been enforced against the practitioners in a final agency action. However, in order to establish ripeness of their constitutionality challenge, the practitioners are not required to demonstrate that the statute has been enforced against them, but only "that an enforcement action is 'imminent or

11

sufficiently likely.'" *Atmos Energy*, 127 S.W.3d at 856 (quoting *City of Waco*, 83 S.W.3d at 175). As the Board states in its brief on appeal, "In early 2007, pursuant to its authority under the Act, the Veterinary Board began sending letters to known unlicensed practitioners of equine dentistry, including the appellants, requesting that they voluntarily stop practicing veterinary dentistry without a license." These cease-and-desist letters, as well as the informal conferences and subsequent cease-and-desist letters stating that the practitioners were in violation of the Act and that their cases would be referred to SOAH, are sufficient to establish that an enforcement action is imminent or sufficiently likely.

In the hearing on its plea to the jurisdiction, the Board cited *Beacon National Insurance Company v. Montemayor*, 86 S.W.3d 260 (Tex. App.—Austin 2002, no pet.), for the proposition that this case is not ripe until administrative proceedings have concluded. However, *Beacon* is distinguishable because the plaintiff in that case sought declaratory judgment as the result of a "perceived threat of enforcement action" by an agency, rather than the actual initiation of administrative proceedings that has occurred in the present case. 86 S.W.3d at 266. In *Beacon*, the agency, in response to an inquiry from the plaintiff, sent the plaintiff a letter describing its interpretation of an agency-issued form. *Id.* at 265. Because the interpretation described in the agency's letter differed from the plaintiff's interpretation and past practices, the plaintiff expressed "concern that [the agency] will institute an administrative enforcement action against it." *Id.* The practitioners, on the other hand, do not simply perceive a threat that the Board will initiate an enforcement action, but have received two cease-and-desist orders, participated in an informal settlement conference, and been informed that the Board will refer the case to SOAH for a contested case hearing. Unlike the perceived threat of enforcement present in *Beacon*, the level of agency

12

action shown by the Board reflects that an agency proceeding against the practitioners in SOAH is "imminent or sufficiently likely" to occur. *City of Waco*, 83 S.W.3d at 175. Because the practitioners have shown that an enforcement action is imminent or sufficiently likely in this case, we hold that the current controversy is fit for judicial review.

Furthermore, the practitioners have established that they would suffer hardship if judicial review is withheld until administrative proceedings have concluded. Hardship is shown when a statute "requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance." *Abbott Labs. v. Gardner*, 387 U.S. 136, 153 (1967). When the statute at issue has a "direct and immediate impact" on a party's business enterprise and places them "in the jeopardy of sanction or penalty," such a dilemma is sufficient to show hardship. *Atmos Energy*, 127 S.W.3d at 859.

The Board stipulated in the temporary-injunction hearing that it would not assess the authorized administrative penalty allowed for violations of the Act against the practitioners in this case. *See* Tex. Occ. Code Ann. § 801.451 (West 2004). However, beyond administrative penalties, the practitioners are subject to civil and criminal liability for practicing veterinary medicine without a license. *See id.* § 801.503 (West 2004) (providing that at Board's request, attorney general shall bring action to recover civil penalty of $1,000 for each day of violation of Act), § 801.504 (West Supp. 2008) (providing that violation of Act constitutes class A misdemeanor). While the Board agreed not to seek administrative penalties against the practitioners until all administrative proceedings had concluded, it emphasized at the temporary-injunction hearing that this agreement was made "only with regard to [the] administrative penalty and [the agreement] was very clear we made no representations about anything else either way." Therefore, in light of the continuing threat

13

of civil and criminal liability against the practitioners and the direct effect the Act has on their ongoing business enterprise, the practitioners have established that they would suffer hardship if judicial review was withheld. Because we find that the current controversy is fit for judicial review and that the practitioners would suffer hardship in the absence of judicial consideration, we hold that this case is ripe for review. *See Perry*, 66 S.W.3d at 250 (stating that in order to determine ripeness, courts must consider (1) fitness of issues for judicial decision and (2) hardship to parties of witholding judicial review).

In order to establish that they have standing to bring this declaratory-judgment action, the practitioners must show that there is a real controversy between the parties that will actually be determined by the judicial declaration sought. *See Reconveyance Servs.*, 240 S.W.3d at 435. As previously discussed in connection with ripeness, the practitioners have shown that an agency enforcement action against them is imminent or sufficiently likely to occur, and that they face the hardship of either complying with the Act or facing the jeopardy of sanction or penalty. In light of our analysis regarding the ripeness of the practitioners' claims, we also hold that a real controversy exists between the parties. *See id.* at 436 (stating that "[i]n many cases, the standing and ripeness inquiries merge"). Furthermore, the declaration sought in this case—that the portions of the Act preventing non-veterinarians from practicing equine dentistry are unconstitutional—would not address a merely hypothetical injury, but would resolve the controversy between the parties by remedying the imminent harm of civil and criminal penalties facing the practitioners. *See Texas Ass'n of Bus.*, 852 S.W.2d at 444 (parties lack standing where judgment would address only hypothetical injury). As a result, the practitioners have standing to bring their constitutional claim.

14

The Board further argues that the breeders lack standing because they are not personally aggrieved by the Act. Because the practitioners and the breeders seek the same declaratory and injunctive relief, we need not address the breeders' standing and we express no opinion thereon. *See Neeley v. West Orange-Cove Consol. Indep. Sch. Dist.*, 176 S.W.3d 746, 804 (Tex. 2005) (Brister, J., dissenting) ("When several parties make the same claim for declaratory or injunctive relief, standing for some renders standing for the remainder immaterial."); *Texas Workers' Comp. Comm'n v. Garcia*, 893 S.W.2d 504, 519 (Tex. 1995) (declining to address individual standing of plaintiffs who "bring the same facial challenges and seek the same declaratory relief as" another plaintiff whose standing had been established).

## CONCLUSION

Because we have determined that the trial court had subject-matter jurisdiction over this suit, we reverse the trial court's order granting the Board's plea to the jurisdiction and remand for further proceedings consistent with this opinion.

_____

Diane M. Henson, Justice

Before Justices Patterson, Waldrop and Henson

Reversed and Remanded

Filed:   November 14, 2008

15