# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00105-CV

**Atmos Energy Corporation and Enermart Energy Services Trust, Appellants**

**v.**

**Greg Abbott, in his Official Capacity as the Attorney General of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 345TH JUDICIAL DISTRICT
### NO. GN 202154, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING

## O P I N I O N

This is an appeal from the dismissal of appellants= request for declaratory relief. Appellants, Atmos Energy Corporations (AAtmos@) and Enermart Energy Services Trust (AEnermart@), natural gas sellers, brought a declaratory-judgment suit against the Office of the Attorney General (AOAG@) in Travis County, seeking a declaration that a state statute purporting to set the price of natural gas sold to agricultural users did not apply to them.[1] In the alternative, if the court found the statute applied, they asked that it be found unconstitutional. Prior to seeking declaratory relief in Travis County, appellants were sued under that same price-control statute in Parmer and Hale Counties (Hereinafter, AWest Texas@). Citing the pendency

---

[1] Enermart is owned by Atmos Energy Holdings, Inc., a subsidiary of Atmos. Both allege they do not fall within the price regulation by definition or by exception and present the same points of error; therefore, we will refer to them collectively as Aappellants.@

of the litigation in West Texas on the same issues and appellants=failure to establish an actual or threatened injury, the OAG filed a plea to the jurisdiction. The trial court granted the OAG=S=s plea and dismissed appellants=request for declaratory relief. Because we find that appellants failed to plead a ripe controversy, we affirm the dismissal.

## FACTUAL & LEGAL BACKGROUND

Atmos has been in the business of transporting, delivering, and selling natural gas to agricultural businesses and individual farmers in West Texas for use as fuel for agricultural purposes since March 1, 2001. Enermart was in the same business prior to March 1, 2001. Several of those agricultural businesses and individual farmers have sued appellants for violating section 123.023 of the utilities code (Hereinafter, Athe Ceiling Price Statute@).[2] In this action, appellants sued Greg Abbott, in his official

---

[2] The Ceiling Price Statute can be found in chapter 123, subchapter B of the utilities code. Tex. Util. Code Ann. '' 123.021-.024 (West 1997). (the Athe Agriculture Gas Users Act@). The sections at issue are 123.023 and 123.024, which read as follows:

    (a)   A supplier and an agriculture energy user may by contract establish a price and other terms of service for the furnishing of natural gas.

    (b)   A contract under this section must be negotiated in good faith and the result of arm=s-length bargaining between the parties.

    (c)   Each party shall provide information and maintain records as reasonably necessary for the contract.

    (d)   A price charged to an agriculture energy user under the contract may not exceed the price charged to a majority of the supplier=s commercial users or other similar large-volume users.

capacity as the Attorney General of Texas, for declaratory and supplemental relief pursuant to the Uniform

Declaratory Judgment Act (AUDJA@). Tex. Civ. Prac. & Rem. Code Ann. '' 37.001-.011 (West 1997 &

Supp. 2003). Appellants asked the court to make certain determinations: (1) that they are not subject to

the Ceiling Price Statute, (2) that if they were subject to the Ceiling Price Statute, then they fit within the

Ceiling Price Exception, and (3) that if they were within the statute and not within its exception, the Ceiling

Price Statute was void and unenforceable because it violated due process.

     The OAG filed a plea to the jurisdiction challenging the ripeness of the controversy and

asserting sovereign immunity. The OAG said that it was neither presently engaged in an enforcement action

against appellants under the Ceiling Price Statute nor planning one. The OAG also argued that the

---

*Id*. ' 123.023 (hereinafter Athe Ceiling Price Statute@).

> This subchapter does not apply to a transaction between an agriculture energy user and
> a supplier who does not deliver gas to a municipality unless:
>
> (1)    the parties agree the subchapter applies to the transaction; and
>
> (2)    the contract states the subchapter applies to the transaction.

*Id*. ' 123.024 (Hereinafter, Athe Ceiling Price Statute Exception@).

declaratory-judgment action was improper at a time when the applicability of the statute was being litigated in two separate private lawsuits against appellants in West Texas. Without specifying the grounds, the district court granted the plea to the jurisdiction.

On appeal, appellants raise three issues. Appellants= first issue has three subparts, which we deal with collectively under ripeness. Appellants argue that the case is ripe because (1) the attorney general has not disavowed the possibility of enforcement of the Ceiling Price Statute against them, (2) Atraditional notions@ of ripeness do not apply where a party makes a facial challenge to the constitutionality of a statute, and (3) they have alleged the Aripening seeds@ of controversy. In their second point of error, appellants allege that the pendency of litigation in West Texas was irrelevant because the West Texas litigants were not parties to their request for declaratory relief. Last, appellants argue that there is a limited waiver of sovereign immunity under the UDJA. Because we believe the issues raised by appellants to the trial court were not ripe for adjudication, we affirm the district court=s dismissal of appellants= plea dismiss their appeal and need not address their remaining issues.

## DISCUSSION

Since this is an appeal from a plea to the jurisdiction, we will review the face of appellants= pleadings to determine whether they show a lack of jurisdiction or whether the pleadings, if liberally construed, favored jurisdiction. *See Beacon Nat=l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 266 (Tex. App.CAustin 2002, no pet.). The plaintiff bears the burden of alleging facts that affirmatively show the trial court had subject matter jurisdiction. *Id*.

In their pleadings, appellants said:

4

**TRADITIONAL RIPENESS CONSIDERATIONS DO NOT APPLY TO LEGAL QUESTIONS OF STATUTORY CONSTRUCTION AND FACIAL UNCONSTITUTIONALITY.** It is well established that a business challenging a statute as unconstitutional on its face need not wait until the state has taken action to enforce the statute against it. The existence of a self-executing regulatory statute, believed to be unconstitutional, that nevertheless presumptively applies to govern the on-going activities of a business enterprise places that business into the intolerable uncertainty the Declaratory Judgments Act was to remedy. *See, e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967).

. . . .

The reasons given for the distinction between Aon its face@ and Aas applied@ challenges are that facial challenges, such as those before this Court, present questions of law that do not require the development of specific facts.

We are uncertain what appellants mean when they say that Atraditional ripeness considerations do not apply@ because they attempt to support that assertion with traditional notions of ripeness. First, appellants state that a business subject to state regulation may challenge that regulation before it is enforced against it. This type of Apre-enforcement@ suit is common. The business does not have to establish that the regulation has been enforced against it but that an enforcement action is Aimminent or sufficiently likely.@ *City of Waco v. Texas Natural Res. Conservation Comm=n*, 83 S.W.3d 169, 175 (Tex. App.CAustin 2002, pet. denied) (AA claimant is not required to show that the injury has already occurred, provided the injury is imminent or sufficiently likely.@); *Texas Dep=t of Banking v. Mount Olivet Cemetary Ass=n*, 27 S.W.3d 276, 282 (Tex. App.CAustin 2000, pet. denied) (AIn order for a party to present a justiciable controversy, facts must be sufficiently developed so that an injury has occurred or is likely to occur, rather than being contingent or remote.@). Second, appellants say they are bringing a facial

challenge to the constitutionality of the statute. Again, this is a traditional challenge. Appellants would have to show that Athe statute, by its terms, always operates unconstitutionally . . . as to them.@ *Texas Workers= Comp. Comm=n v. Garcia*, 893 S.W.2d 504, 518 (Tex. 1995). Appellants= most troublesome argument, more clearly advanced on appeal than in their trial pleadings, is that where a party raises the facial unconstitutionality of a statute, a court need not await the timely development of the facts but may address the constitutionality of the statute regardless of whether the facts are sufficiently developed.[3] As we set out below, the necessity for the timely development of the facts underlying the dispute is especially important

---

[3] In support of this proposition, appellants cite *Texas Boll Weevil Eradication Foundation, Inc. v. Lewellen*, 952 S.W.2d 454 (Tex. 1997), *Texas Highway Commission v. Texas Association of Steel Importers, Inc.*, 372 S.W.2d 525 (Tex. 1963), and *ANR Pipeline Co. v. Corporation Commission of Oklahoma*, 860 F.2d 1571 (10th Cir. 1988). Appellants argue that the plaintiffs in those cases were allowed to bring facial challenges without establishing ripeness. There are two problems with this argument. First, that in some instances some courts for some reasons do not make a ripeness analysis does not establish the proposition that ripeness is inapplicable where a party makes a facial challenge to the constitutionality of a statute. Second, appellants= reliance on *Texas Boll Weevil* is misplaced because in that case the supreme court did address ripeness and specifically said AWe may not hold the statute facially invalid simply because it may be unconstitutionally applied *under hypothetical facts which have not yet arisen*.@ 952 S.W.2d at 463 (Tex. 1997) (citing *Texas Workers=Comp. Comm=n*, 893 S.W.2d 504, 518 (Tex. 1994)) (emphasis added). This is the ripeness argument appellants contend is absent in some facial challenges to the constitutionality of statutes. In *Steel Importers*, the supreme court did not purport to do away with the ripeness requirements but only found that on the facts presented the effects of a state agency=s order were sufficiently concrete to warrant relief. 372 S.W.2d at 530. As we discuss below, the effects of the Ceiling Price Statute were not sufficiently concrete on the facts laid out before the trial court to warrant relief. And in *ANR*, plaintiff-pipeline companies challenged an Oklahoma statute on the grounds that any state statute purporting to regulate the supply of natural gas was preempted by federal law. 860 F.2d at 1574. The state moved to dismiss plaintiffs= complaint arguing that since it had yet to enforce the statute, the case was not ripe. *Id*. at 1577. The Tenth Circuit applied traditional ripeness notions and said Athe question in each case is whether the facts alleged, under all the circumstances, show there is a substantial controversy between the parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.@ *Id*. In none of these cases did the court reject traditional ripeness notions.

where a party is challenging the constitutionality of a statute. A court cannot pass on the constitutionality of a statute unless the facts have matured, forming the concrete basis against which the statute may be applied. *Rescue Army v. Municipal Court*, 331 U.S. 549, 576 (1947); *Alabama State Fed=n of Labor v. McAdory*, 325 U.S. 450, 461 (1945). Furthermore, appellants have not presented pure questions of law because initially they asked the court to address two questions of fact: AAre we subject to the Ceiling Price Statute?@ and ADo we fit within the Ceiling Price Statute Exception?@ In short, if by stating that Atraditional notions@ of ripeness do not apply, appellants were proposing that they could bring a constitutional challenge to the Ceiling Price Statute even though there was no ripe controversy, we overrule that point. Ripeness remains an essential element of subject matter jurisdiction and a party is not relieved of establishing an actual or threatened injury by bringing a Afacial@ challenge to the constitutionality of the statute. *See Patterson v. Planned Parenthood*, 971 S.W.2d 439, 442 (Tex. 1998); *Mayhew v. Town of Sunnyvale*, 964 S.W.2d 922, 930 (Tex. 1998).

We begin with a review of the ripeness doctrine. The subject matter jurisdiction of courts rests, in part, on the ripeness of the issues. *Patterson*, 971 S.W.2d at 442. ARipeness is one of several categories of justiciability.@ *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (quoting 13A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* ' 3532.1, at 114 (2d ed. 1984)). Justiciability requires a concrete injury, a requirement based on the judicial prohibition against issuing advisory opinions C a power vested by the state constitution in the executive and not the judicial branch of government. *Patterson*, 971 at 442-43 (citing Tex. Const. art. II, ' 1, art. IV, ' ' 1, 22, art. V, ' 8). In addition to its constitutional roots, the prohibition against issuing advisory opinions has a

pragmatic, prudential aspect based on the desire to conserve judicial time and resources Afor real and current controversies, rather than abstract, hypothetical, or remote disputes@ and to avoid making bad law. *Id*. at 443; Wright, *supra* at 115. This prudential aspect of the ripeness doctrine is particularly important in cases raising constitutional issues because courts should avoid passing on the constitutionality of statutes, *even where jurisdiction arguably exists*, Auntil the issues are presented with clarity, precision and certainty, . . . in clean-cut and concrete form.@ *Rescue Army*, 331 U.S. at 576. The Supreme Court has stated that:

> It has long been the Court=s considered practice not to decide abstract, hypothetical or contingent questions . . . or to decide any constitutional question in advance of the necessity for its decision . . . or to formulate a rule of constitutional law broader than is required by the precise facts to which it is to be applied . . . or to decide any constitutional question except with reference to the particular facts to which it is to be applied . . . .

*McAdory*, 325 U.S. at 461 (citations omitted). Given these doctrinal underpinnings, ripeness is both a question of timing, that is, when one may sue, *Perry*, 66 S.W.3d at 249 and *Patterson*, 971 S.W.2d at 442, a question of discretion, whether the court *should* hear the suit and not whether it *can* hear the suit, *Perry*, 66 S.W.3d at 249-50. Those factual and prudential underpinnings of ripeness are embodied in the following considerations: (1) the fitness of the issues for judicial decision; and (2) the hardship occasioned to a party by the court=s denying judicial review. *See id*. at 250 (citing *Abbott Labs. v. Gardner*, 387 U.S. 136, 149 (1967)); *City of Waco*, 83 S.W.3d at 177; Wright, *supra* ' 3942 (stating that ripeness is concerned with present suitability of facts for adjudication and potential for hardship in denying complainant relief sought).

8

We do not believe appellants= pleadings affirmatively showed that the issues they presented were fit for review and that the failure to address those issues would constitute a hardship on appellants. Whether there is or may be a controversy between appellants and the OAG in this instance is too speculative to support appellants= contention that they are under an imminent threat of enforcement. Appellants attempted to create a justiciable controversy by pleading that litigation with the OAG was Ainevitable@ and that A[v]ery soon, [the OAG] is going to have to defend the constitutionality of the Ceiling Price Statute.@ Appellants cite *KVUE, Inc. v. Austin Broadcast Corp.*, 709 F.2d 922 (5th Cir. 1983), for the proposition that its case is ripe because the OAG has refused to disavow future enforcement.

In *KVUE*, Austin Broadcasting Corp. and KVUE Television sought a declaration that a Texas statute dealing with advertising rates was unconstitutional. *Id*. at 926. The district court dismissed the case, citing plaintiffs= lack of standing. *Id*. The statute at issue made it a crime for television stations to charge political advertisers more for their advertising than other similarly situated advertisers. *Id*. A violation carried a monetary penalty. *Id*. The county attorney, who was charged with enforcing the statute, testified that she had not enforced, had not threatened to enforce, and was not planning to enforce the statute against plaintiffs. *Id*. at 930. She would not disavow enforcement in the future, however. *Id*.

Before examining the underlying facts, the Fifth Circuit reviewed the ripeness doctrine. *See id*. at 927. The court explained that a case or controversy exists where the parties have adverse legal interests that are not hypothetical or abstract but definite and concrete. *Id*. at 927. Hypothetical or abstract questions differ from definite and concrete ones only by degree, dependent upon Athe imminence of the harm, the adversariness of the parties= positions, and the reality of injury to the plaintiff.@ *Id*. In finding that

9

plaintiffs had pled a justiciable controversy, the Fifth Circuit reasoned that plaintiffs were under sufficient uncertainty and threat of prosecution because any one of the plaintiffs=advertisers could make a complaint to the county attorney under the statute. *Id*. The court also added that KVUE was confronted with a dilemma: abide by the statute and suffer financial loss or consciously disregard it and face prosecution. *Id*.

We think the concepts set out in *KVUE* comport with those set out in *Perry*, namely, that appellants had to show that (1) the issues were fit for judicial review and (2) the denial of the relief requested would constitute a hardship. *Perry*, 66 S.W.3d at 249-50. First, the issues raised by appellants were not fit for judicial review because whether appellants are subject to the Ceiling Price Statute is dependent on many facts not before the trial court.[4] And before the trial court could reach the

_____

[4] That resolution of appellants=declaratory judgment is dependent on facts not before the trial court leads us to address a related issueCthe absence of the West Texas litigantsConly to point out that the factual issues missing here are now at issue in the litigation in West Texas. And given the status of that litigation, we cannot help but think that appellants are attempting to circumvent the proceedings in West Texas by bringing this declaratory action in Travis County. Appellants have brought their case opposite a party with no adverse interests in a forum removed from the real controversy to obtain an advisory opinion which, if favorable, might dispose of the other litigation, and, if unfavorable, carry little or no weight outside Travis County. *See Southwest Airlines Co. v. Texas High-Speed Rail Auth.*, 863 S.W.2d 123, 126 (Tex. App.CAustin 1993, writ denied) (affirming trial court=s dismissal of request for declaratory relief

constitutionality of the statute, appellants would have had to establish they were in fact subject to itCa question of standing. *Texas Ass=n of Bus. v. Texas Air Control Bd.*, 852 S.W.2d 440, 444 (Tex. 1993) (noting the failure to establish standing would deprive the trial court of subject-matter jurisdiction).

The Ceiling Price Statute says, AA price charged to an agriculture energy user under the contract may not exceed the price charged to a majority of the supplier=s commercial users or other similar large-volume users.@ Tex. Util. Code Ann. ' 123.023(d). A determination of whether appellants are suppliers is a question of fact. Whether appellants sell to Aagricultural end users@ is a question of fact. Possibly the most fact-intensive issue will be the determination of the price ceiling itself. The statute does not set the price; it only prohibits a supplier from charging more to an agricultural user than it does Ato a majority of@ its other buyers. The only way a court can decide whether appellants were in violation of the Ceiling Price Statute would be to collect all contracts between appellants and its Acommercial users or other similar large-volume users,@ determine the majority price, then compare that price with the price charged to appellants= agricultural end users.

Second, appellants have not shown that the Ceiling Price Statute would have the sort of immediate and significant change in their day-to-day business activities that would constitute a hardship. The Court in *Abbott Laboratories* said A[w]here a regulation requires an immediate and significant change

_____

where plaintiff was Amerely attempting to obtain a different judgment, in the same controversy, by way of declaratory and injunctive relief@). This sort of piecemeal litigation is a waste of judicial resources and risks inconsistent judgments.

11

in the plaintiffs= conduct of their affairs with serious penalties attached to noncompliance, access to the courts under the Administrative Procedure Act and the Declaratory Judgment Act must be permitted, absent a statutory bar or some other unusual circumstance.@ 387 U.S. at 153. The regulations at issue in *Abbott Laboratories* and *KVUE* had a direct and immediate impact on the business challengers and carried with them the possibility of sanctions. Unlike the situation in *KVUE*, the OAG=s refusal to disavow enforcement here does not place appellants in the jeopardy of sanction or penalty because a violation of the Ceiling Price Statute carries with it no sanction or penalty. *See* Tex. Gov=t Code Ann. '' 123.001-.024. Appellants are not faced with the dilemmaCcompliance or sanctionCfacing the litigants in *Abbott Laboratories* and *KVUE*. In short, all told, appellants failed to show the requisite hardship of compliance.

Because appellants failed to establish a justiciable controversy, we reject appellants= ripeness arguments and affirm the trial court=s dismissal of appellants= request for declaratory relief.

## CONCLUSION

We hold that this case is not fit for judicial decision, that the denial of the requested relief will not constitute a hardship on appellants, and that it would have been imprudent given the speculative and indefinite state of the facts for the trial court to have addressed appellants= complaint. We hold appellants failed to establish subject-matter jurisdiction, and as a result, we affirm the trial court=s order, granting the OAG=s plea to the jurisdiction.

12

David Puryear, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   January 29, 2004