# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00147-CV

**Governor Rick Perry, in his Official Capacity as Governor of The State of Texas, Appellant**

**v.**

**People for Efficient Transportation, Inc., Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 353RD JUDICIAL DISTRICT**
**NO. D-1-GN-05-003618, HONORABLE GISELA D. TRIANA-DOYAL, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

Governor Rick Perry, in his official capacity as Governor of the State of Texas, appeals the trial court's denial of his plea to the jurisdiction in a suit for declaratory relief brought by appellee People for Efficient Transportation, Inc. (PET). The Governor argues that the trial court does not have jurisdiction over this cause because PET lacks standing to bring suit and because sovereign immunity has not been waived. Because we agree that this suit is barred by sovereign immunity, we reverse the trial court's order denying the Governor's plea to the jurisdiction and dismiss PET's claims against the Governor.

## BACKGROUND

PET describes itself as a nonprofit corporation made up of "Texas citizens, registered voters, property taxpayers and future toll taxpayers" who "oppose Governor Perry's plan to privatize

and toll public highways." On October 5, 2005, PET filed a declaratory judgment action against the Governor, the Texas Department of Transportation (TxDOT), the Capital Area Metropolitan Planning Organization (CAMPO), and the San Antonio-Bexar County Metropolitan Planning Organization (SAMPO). CAMPO and SAMPO are both metropolitan planning organizations (MPOs) created for the purpose of providing centralized planning for federally funded transportation projects. *See* 23 U.S.C.A. § 134(d) (West Supp. 2008) (MPOs must be designated to "carry out the transportation planning process" required to receive federal funds). Under federal law, MPOs are responsible for developing long-range plans and improvement programs for transportation systems within their region. *Id.* § 134(c)(1). MPOs are required to create priority lists of proposed federally supported projects and determine, in consultation with the State, which projects from the priority list will be funded by federal money. *Id.* § 134(j)(2)(A), (k)(4)(A). Under federal law, MPOs "shall be designated . . . by agreement between the Governor and units of general purpose local government that together represent at least 75 percent of the affected population" or in accordance with procedures established by applicable state or local law. *Id.* § 134(d)(1).

In this suit, PET sought declarations that the Governor and TxDOT did not have authority under Texas law to "create or establish" CAMPO or SAMPO, that the service of state legislators on the governing boards of CAMPO and SAMPO violates the separation-of-powers clause of the Texas Constitution, *see* Tex. Const. art. II, § 1, and that neither CAMPO nor SAMPO have authority under Texas law to appropriate funds received from the Surface Transportation Program, a federal grant program used to fund certain types of transportation projects, *see* 23 U.S.C.A. § 133 (West 2002 & Supp. 2008).

The Governor filed a plea to the jurisdiction, asserting that sovereign immunity had

not been waived and that PET lacked standing to bring suit. TxDOT, CAMPO, and SAMPO filed a separate, consolidated plea, arguing that PET lacked standing and that the suit was barred by limitations. The trial court denied the pleas to the jurisdiction based on sovereign immunity and limitations and ordered PET to amend its pleadings to include factual allegations supporting standing. The Governor then brought this interlocutory appeal of the trial court's denial of his plea to the jurisdiction. TxDOT, CAMPO, and SAMPO did not appeal the denial of their plea to the jurisdiction and therefore are not parties to this appeal.

## STANDARD OF REVIEW

A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject-matter jurisdiction. *Harris County v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004). In an appeal from a plea to the jurisdiction, we "review the face of appellants' pleadings to determine whether they show a lack of jurisdiction or whether the pleadings, if liberally construed, favored jurisdiction." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 855 (Tex. App.—Austin 2004, no pet.). Whether a trial court has subject-matter jurisdiction is a question of law we review de novo. *Westbrook v. Penley*, 231 S.W.3d 389, 394 (Tex. 2007). If the pleadings do not affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend. *Texas Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226-27 (Tex. 2004). If the pleadings affirmatively negate jurisdiction, then a plea to the jurisdiction may be granted without allowing an opportunity to amend. *Id.* at 227. Unless a pleaded jurisdictional fact is challenged and conclusively negated, it must be taken as true for purposes of determining subject-matter jurisdiction. *City of*

3

*Austin v. Leggett*, 257 S.W.3d 456, 462 (Tex. App.—Austin 2008, pet. denied). In reviewing a plea to the jurisdiction, we consider the pleadings and, when necessary to resolve the jurisdictional issues raised, relevant evidence submitted by the parties. *See Miranda*, 133 S.W.3d at 227.

## DISCUSSION

In two issues on appeal, the Governor argues that the trial court erred in denying his plea to the jurisdiction because sovereign immunity has not been waived and because PET lacks standing to bring suit. Because we agree that PET's claims against the Governor are barred by sovereign immunity, we need not reach the issue of standing.

Absent an express waiver of sovereign immunity, the State, its agencies, and its officials are generally immune from suit. *State v. Holland*, 221 S.W.3d 639, 643 (Tex. 2007). PET argues that sovereign immunity is not implicated here because the Governor acted outside of his legal authority by creating CAMPO and SAMPO.[1] A suit for declaratory relief against a state official allegedly acting without legal authority is not considered a suit against the State and therefore does not implicate the sovereign-immunity doctrine. *Texas Natural Res. Conservation Comm'n v. IT-Davy*, 74 S.W.3d 849, 855 (Tex. 2002). However, "a suit that seeks to control a state official's exercise of discretion within [his] legal authority is a suit to control state action and cannot be maintained without legislative permission." *McLane Co. v. Strayhorn*, 148 S.W.3d 644, 649 (Tex. App.—Austin 2004, pet. denied). Where a plaintiff alleges ultra vires action to avoid

---

[1] PET concedes that its other two claims for declaratory relief—that the service of state legislators on the governing boards of CAMPO and SAMPO violates the separation-of-powers clause, and that neither CAMPO nor SAMPO have authority under Texas law to appropriate funds received from the Surface Transportation Program—do not directly involve the Governor and therefore are irrelevant to this appeal.

4

sovereign immunity, the jurisdictional issue may sometimes be determined as a matter of law "by construing the constitutional and statutory provisions defining the actor's authority and ascertaining whether the acts alleged would exceed that authority." *Hendee v. Dewhurst*, 228 S.W.3d 354, 368 (Tex. App.—Austin 2007, pet. denied). Therefore, the question before us is whether the acts alleged by PET constitute ultra vires action by the Governor.

Federal law provides that, as a condition to receiving federal highway funding, MPOs "shall be designated . . . by agreement between the Governor and units of general purpose local government that together represent at least 75 percent of the affected population" or in accordance with procedures established under state or local law. 23 U.S.C.A. § 134(d)(1). PET concedes in its brief that it is not challenging the Governor's authority to *designate* a validly existing local governmental entity as an MPO, but only the Governor's authority to *create or establish* entities such as CAMPO and SAMPO to be designated as MPOs.

The Texas Administrative Code sets forth regulations related to the designation of MPOs and provides that for each state planning region, the Governor must designate as an MPO either an existing regional council of governments or an agency recommended for designation by the local units of government that will be affected by the MPO's transportation planning agreements. 1 Tex. Admin. Code § 5.54 (2009) (Office of the Governor, Metro. Planning Orgs.).

SAMPO was created by an agreement between TxDOT, the City of San Antonio, Bexar County, and the Metropolitan Transit Authority. The SAMPO agreement, which appears in the record, states that "the San Antonio-Bexar County Urban Transportation Study Steering Committee . . . has been designated by the Governor as the [MPO] for the San-Antonio-Bexar County Study area." As a result of this designation, the parties to the committee executed the

5

agreement to create SAMPO for the purpose of fulfilling their MPO obligations, stating that they sought to provide a "one-committee structure" to carry out "responsibility for project implementation within the Study area." Similarly, CAMPO is governed by a joint powers agreement between TxDOT, the City of Austin, Travis County, Williamson County, Hays County and the Capital Metropolitan Transportation Authority. This agreement states that the signatory entities, in executing the joint powers agreement to replace the original agreement that created CAMPO, sought to provide a "one-committee structure" to carry out "responsibility for project implementation within the study area."[2] Based on these agreements, we conclude that the MPOs were created by agreement among TxDOT and the participating governmental entities, rather than by the Governor.

Furthermore, the participating governmental entities were authorized under Texas law to create separate legal entities such as CAMPO and SAMPO to fulfill their duties as MPOs. Chapter 791 of the Texas Government Code, Tex. Gov't Code Ann. § 791.001-.033 (West 2004 & Supp. 2008), authorizes local governments to enter interlocal contracts with one another and with agencies of the State to collectively "provide a governmental function or service," *id.* § 791.011(c). To supervise the performance of an interlocal contract, the parties may, among other things, create an administrative agency, which has the power to employ personnel, perform administrative activities, and provide administrative services necessary to perform the interlocal contract. *Id.* § 791.013(a)(1), (b). Entities created pursuant to the authority granted by chapter 791 enjoy local-government status and operate as distinct governmental units. *Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Texas Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320,

---

[2] Presumably, the Governor later redesignated CAMPO and SAMPO as MPOs. The parties agree that CAMPO and SAMPO are currently designated as MPOs.

324-35 (Tex. 2006).

In designating CAMPO and SAMPO as MPOs, the Governor did not create or establish those entities as alleged by PET, but simply designated them based on the recommendation of the affected local governmental entities, as required by administrative rule. *See* 1 Tex. Admin. Code § 5.54. The MPOs were actually created and established by the local governmental entities themselves, pursuant to their authority under chapter 791 of the government code. *See* Tex. Gov't Code Ann. § 791.013(a)(1). Therefore, PET's petition does not, as a matter of law, sufficiently allege that the Governor acted ultra vires. Accordingly, we hold that the trial court erred in denying the Governor's plea to the jurisdiction.

## CONCLUSION

We reverse the trial court's order denying the Governor's plea to the jurisdiction and render judgment dismissing PET's claims against the Governor for lack of subject-matter jurisdiction.

_____

Diane M. Henson, Justice

Before Chief Justice Law, Justices Puryear and Henson
   Chief Justice Law Not Participating[3]

Reversed and Rendered

Filed: May 15, 2009

_____

[3] Because Chief Justice Law was originally assigned to author this opinion, authoring duties were reassigned as of April 1, 2009.

7