# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-13-00533-CV

The Railroad Commission of Texas, Appellant

v.

CenterPoint Energy Resources Corp. d/b/a CenterPoint Energy Entex
and CenterPoint Energy Texas Gas, Appellee

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT**
**NO. D-1-GN-10-003981, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

---

## NO. 03-13-00534-CV

The Railroad Commission of Texas, Appellant

v.

Texas Gas Service Company, a Division of ONEOK, Inc., Appellee

---

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT**
**NO. D-1-GN-10-003983, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING**

The Railroad Commission of Texas, Appellant

v.

CenterPoint Energy Resources Corp. d/b/a CenterPoint Energy Entex
and CenterPoint Energy Texas Gas, Appellee

FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. D-1-GN-10-003982, HONORABLE STEPHEN YELENOSKY, JUDGE PRESIDING

# M E M O R A N D U M   O P I N I O N

The Texas Railroad Commission (the Commission) appeals the trial court's reversal in part of its final orders in three annual review proceedings under cost-of-service adjustment (COSA) tariffs involving essentially identical issues. CenterPoint Energy Resources Corp. d/b/a CenterPoint Energy Entex and CenterPoint Energy Texas Gas (CenterPoint) and Texas Gas Service Company, a Division of ONEOK, Inc. (Texas Gas) (the Utilities) sued for judicial review of final orders issued by the Commission denying the Utilities' recovery of certain expenses for meals, lodging, and other items and ordering certain guidelines for recovery of similar expenses in future COSA reviews. Because we conclude that the Utilities' claims are not ripe, we reverse the trial court's judgment and dismiss the Utilities' claims.

**FACTUAL AND PROCEDURAL BACKGROUND**

In April 2010, the Utilities applied for cost-of-service adjustments to their rates pursuant to annual reviews authorized under their respective COSA tariffs for certain service areas. Rates for the affected customers were initially determined in contested case hearings that resulted in the adoption of tariffs with COSA clauses. A COSA clause is a formula included in a utility's tariff that allows adjustments to customer charges without the necessity of a full-blown "Statement of Intent" rate case. *See Texas Coast Utils. Coal. v. Railroad Comm'n*, 423 S.W.3d 355, 357, 374 (Tex. 2014) (upholding authority of Commission to adopt gas utility rate schedule providing for automatic annual adjustments based on increases or decreases in utility's cost of service, i.e., COSA clause). The terms of a COSA clause vary depending on what is approved as part of the tariff in the rate case. The tariffs in these cases provide that the annual rate adjustment is to be determined by a calculation based on calendar year operating expenses, return investment, and certain taxes. If the resulting change is positive, the amount charged goes up; if it is negative, the amount charged goes down. The adjustment is capped at 5% of the customer charge that was in effect at the end of the preceding calendar year in CenterPoint's tariffs and at the percentage change in the Consumer Price Index for All Urban Consumers in Texas Gas's tariff. These were the first COSA filings made by the Utilities under their respective tariffs.

A COSA tariff annual review is a streamlined procedure that does not include a hearing; instead, the adjustment is determined following staff review of the evidence filed by the utility. In each of the present cases, the Commission questioned and ultimately disallowed certain expenses for meals, travel, and other items for which the Utilities could not produce itemized

3

receipts.[1]  In its final orders, the Commission made certain findings of fact and conclusions of law concerning the disallowed expenses and included two "ordering paragraphs" requiring the Utilities to meet certain evidentiary criteria for recovery of similar expenses in the future.[2]  The two ordering paragraphs provided:

> **IT IS FURTHER ORDERED** that [the Utilities] shall not include any employee or contractor expenses from employee or contractor expense reports reimbursement in future COSA filings that cannot be supported by a detailed itemized receipt which shows the specific amounts and line item charges.

> **IT IS FURTHER ORDERED** that [the Utilities] shall identify and justify each meal expense that exceeds $25.00 per person and any lodging expense over $150.00 per person per night that [the Utilities] propose[] to include in future COSAs.

The Utilities filed motions for rehearing complaining that the findings of fact, conclusions of law, and ordering paragraphs concerning the disallowed expenses were statements of new policy, not backed by any rule or guideline, and were therefore made through unlawful procedure, arbitrary and capricious, and not supported by substantial evidence.  The Commission denied the motions for rehearing, and the Utilities filed suits for judicial review asserting the same claims.  *See* Tex. Util. Code § 105.001(a) (any party to proceeding before Commission entitled to judicial review under substantial evidence rule).  The Commission filed motions to dismiss based, in part, on its contention that the Utilities were requesting advisory opinions because their claims are

---

[1]  The removal of the disputed expenses did not result in any change to the Utilities' proposed adjustments, and the record reflects that the Utilities withdrew their requests for the questioned expenses.

[2]  In each case, calculation errors not relevant to this appeal were corrected and a nunc pro tunc order issued.

not ripe. The trial court denied the Commission's motions to dismiss and reversed the final orders, finding that the Commission acted arbitrarily and capriciously by imposing a new policy in the orders and that the policy was made through unlawful procedure and was not supported by substantial evidence. These appeals followed.

## DISCUSSION

In its first issue, the Commission argues that the Utilities' claims are not ripe and they therefore seek an impermissible advisory opinion.[3] The Commission contends that the Utilities request a predetermination of a hypothetical matter that could arise in the future, which is not a matter fit for judicial consideration. The Utilities argue that the orders "expressly appl[y] . . . to future COSA proceedings," "mandate the manner in which all future rate adjustments filed pursuant to the applicable COSA tariff will be resolved," and "fundamentally change the way in which COSA adjustments are calculated in future COSA proceedings." They further contend that the orders place "obligations and burdens on [them] *now*, and that failure to abide by these new obligations and burdens could bar recovery in a future COSA proceeding." Thus, the Utilities contend, they seek

---

[3] The Commission also contends that the Utilities lack standing because in their motions for rehearing, they did not challenge the Commission's final decisions on rate adjustments and instead attacked only the underlying findings of fact and conclusions of law. This Court has held that to have standing to seek judicial review, one must be aggrieved by the final order and not merely by an underlying finding or conclusion, *see GTE Sw. Inc. v. Public Util. Comm'n of Tex.*, 37 S.W.3d 546, 548 (Tex. App.—Austin 2001, no pet.) (citing *Champlin Exploration, Inc. v. Railroad Comm'n*, 627 S.W.2d 250, 252 (Tex. App.—Austin 1982, writ ref'd n.r.e.)). However, the Utilities' motions for rehearing expressly challenged the ordering paragraphs as well as the findings and conclusions. We overrule the Commission's first issue as to this argument.

5

real relief and an opinion that will affect "all COSA cases [they] will file in the future," not an advisory opinion.

"The courts of this state are not empowered to give advisory opinions[, and] [t]his prohibition extends to cases that are not yet ripe." *Patterson v. Planned Parenthood of Hous. & Se. Tex., Inc.*, 971 S.W.2d 439, 443 (Tex. 1998) (citations omitted). The ripeness doctrine "serves to avoid premature adjudication" and "focuses on whether the case involves 'uncertain or contingent future events that may not occur as anticipated, or indeed may not occur at all.'" *Perry v. Del Rio*, 66 S.W.3d 239, 250 (Tex. 2001) (citations omitted). "A case is not ripe when its resolution depends on contingent or hypothetical facts, or upon events that have not yet come to pass." *Patterson*, 971 S.W.2d at 443. "Ripeness is both a question of timing, that is, when one may sue, a question of discretion, or whether the court *should* hear the suit, and not whether it *can* hear the suit." *Atmos Energy Corp. v. Abbott*, 127 S.W.3d 852, 858 (Tex. App.—Austin 2004, no pet.) (internal citations omitted) (citing *Perry*, 66 S.W.3d at 249–50; *Patterson*, 971 S.W.2d at 442; *City of Waco v. Texas Natural Res. Conserv. Comm'n*, 83 S.W.3d 169, 177 (Tex. App.—Austin 2002, pet. denied)). "In the administrative-law context, moreover, avoiding premature litigation over administrative determinations prevents courts from 'entangling themselves in abstract disagreements over administrative policies' while simultaneously allowing the agency to perform its functions unimpeded." *Trinity Settlement Servs., LLC v. Texas State Secs. Bd.*, 417 S.W.3d 494, 506 (Tex. App.—Austin 2013, pet. denied) (quoting *Patterson*, 971 S.W.2d at 443). The determination of ripeness depends on "(1) the fitness of the issues for judicial decision; and (2) the hardship occasioned to the party by the court's denying judicial review." *Atmos Energy*, 127 S.W.3d at 858

6

(citing *Perry*, 66 S.W.3d at 250 (citing *Abbott Labs v. Gardner*, 387 U.S. 136, 149 (1967); *City of Waco*, 83 S.W.3d at 177)). Ripeness should be decided on the basis of all the information available to the court, and we may consider intervening events that occur after the decision in the lower court. *Perry*, 66 S.W.3d at 250; 13 Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice & Procedure* § 3532.1, at 136–37 (2d ed. 1984).

We do not believe the Utilities have affirmatively established that the issues they presented were fit for review and that the failure to address those issues would constitute a hardship on the Utilities. *See Perry*, 66 S.W.3d at 250; *Atmos Energy*, 127 S.W.3d at 858. Whether there may be an actual controversy between the Utilities and the Commission is too uncertain and speculative to support the Utilities' contention that their claims are ripe. Because the Utilities complain of future enforcement, they must show that enforcement is "imminent or sufficiently likely." *See Trinity Settlement*, 417 S.W.3d at 506; *Rea v. State*, 297 S.W.3d 379, 383 (Tex. App.—Austin 2009, no pet.) (to establish ripeness, plaintiffs must demonstrate injury is imminent, direct, and immediate, not merely remote, conjectural, or hypothetical); *Atmos Energy*, 127 S.W.3d at 856; *City of Waco*, 83 S.W.3d at 175. A perceived threat of enforcement does not create a justiciable controversy. *Compare Mitz v. Texas State Bd. of Veterinary Med. Exam'rs*, 278 S.W.3d 17, 25 (Tex. App.—Austin 2008, pet. dism'd), *with Beacon Nat'l Ins. Co. v. Montemayor*, 86 S.W.3d 260, 267–68 (Tex. App.—Austin 2002, no pet.).

The Utilities attempt to characterize their claims as ripe by arguing that the language of the ordering paragraphs will require them to meet evidentiary requirements in all future annually required COSA filings and that the orders place "obligations and burdens" on them now. Tellingly,

7

however, the Utilities argue that their failure to meet these obligations and burdens *could* bar recovery in a *future* COSA proceeding. This perceived threat as to future COSA filings does not rise to the level of imminent or likely injury so as to present a justiciable claim. *See Mitz*, 278 S.W.3d at 25 (contrasting actual initiation of administrative action suggesting imminent proceeding in that case with mere perceived threat in *Beacon Nat'l*, 86 S.W.3d at 267–68). And while we may consider intervening events that occur after a decision in the lower court, *see Perry*, 66 S.W.3d at 250, the Utilities have not presented any evidence that the Commission has taken any steps to impose the requirements on them since issuing the final orders or that there is any existing or continuing threat of liability or penalty. *Cf. Mitz*, 278 S.W.3d at 25–26 (constitutional claim ripe for review considering continuing threat of civil and criminal liability against practitioners and direct effect act had on business enterprise); *Patel v. Texas Dep't of Licensing & Regulation*, No. 03-11-00057-CV, 2012 Tex. App. LEXIS 6187, at *23 (Tex. App.—Austin July 25, 2012, pet. granted) (constitutional claims ripe where appellants subject to continuing threat of civil and criminal liability, as well as administrative penalties and sanctions). Thus, the Utilities have not established that enforcement is imminent or sufficiently likely, *see Trinity Settlement*, 417 S.W.3d at 506; *Atmos Energy*, 127 S.W.3d at 856; *City of Waco*, 83 S.W.3d at 175, and we conclude that the Utilities' issues are not fit for judicial review, *see Perry*, 66 S.W.3d at 250; *Atmos Energy*, 127 S.W.3d at 858.

To prevail, the Utilities must show that they would suffer hardship if judicial review is withheld until enforcement of the requirements in the ordering paragraphs. *See Perry*, 66 S.W.3d at 250; *Atmos Energy*, 127 S.W.3d at 858. Hardship is shown when the statute, rule, or policy at issue "'requires an immediate and significant change in the plaintiffs' conduct of their affairs with

serious penalties attached to noncompliance.'" *Mitz*, 278 S.W.3d at 26 (quoting *Abbott Labs v. Gardner*, 387 U.S. 136, 153 (1967)).  When the requirement at issue has a direct and immediate impact on the party's business and places it in jeopardy of sanction or penalty, that is sufficient to show a hardship.  *Id.*; *Atmos Energy*, 127 S.W.3d at 859.

Here, the ordering paragraphs require the Utilities to present itemized receipts and identify and justify certain expenses if they want the Commission to allow their inclusion in the calculation of future adjustments.  Documenting and justifying expenses to be included in rate calculations does not constitute "a significant change in [the Utilities'] conduct."  *See Abbott Labs*, 387 U.S. at 153; *Mitz*, 278 S.W.3d at 26; *see also* 18 C.F.R. pt. 201, General Instructions, (2) Records (A) (Federal Energy Regulatory Commission's (FERC's) Uniform System of Accounts (USOA) (providing utilities shall keep books and records "so as to be able to furnish readily full information as to any item included in any account" and support each entry shall "by such detailed information as will permit ready identification, analysis, and verification of all facts relevant thereto"); 16 Tex. Admin. Code § 7.310(a) (Railroad Comm'n of Tex., System of Accounts (requiring gas utilities to use FERC's USOA for all operating and reporting purposes); Tex. Util. Code § 104.008(1) (in proceeding involving rate change proposed by utility, utility has burden of proving rate change is just and reasonable); *City of Amarillo v. Railroad Comm'n*, 894 S.W.2d 491, 498 (Tex. App.—Austin 1995, writ denied) (in any proceeding to change rates, utility bears burden of proof to show rate change and components thereof, such as operating expenses, are just and reasonable).

Moreover, the Utilities have not made the requisite showing of hardship. *See Perry*, 66 S.W.3d at 250; *Atmos Energy*, 127 S.W.3d at 859–60. Significantly, they are not aggrieved by the Commission's disallowance of undocumented expenses, which did not result in any changes to their requested rates. Nor do they face any other sanction or penalty for noncompliance. *See Atmos Energy*, 127 S.W.3d at 859 (concluding appellants were not in jeopardy of sanction or penalty because violation of statute carried no sanction or penalty). Likewise, here, the Utilities face no sanction or penalty for failure to comply with the requirements because the ordering paragraphs include no provision for sanctions or penalties. *Id.*; *cf. Mitz*, 278 S.W.3d at 26 (appellants showed hardship where they faced continuing threat of civil and criminal liability). As noted above, the Utilities argue that failure to meet the requirements *could* bar recovery in the future. Even assuming future recovery of some expenses is actually barred at some point, the inability to recover all expenses does not necessarily harm the Utilities. In fact, even after the questioned expenses were deducted because the Utilities were unable to present the required documentation, the Utilities' requested rates were not affected, and the Commission approved their requested rates. Nor is it certain that the Utilities will request the expenses at issue in future COSA filings; in these cases, they withdrew the questioned expenses and nonetheless received the requested rates. Thus, the Utilities are not faced with the dilemma of compliance or sanction, and they have failed to show the requisite hardship. *See Perry*, 66 S.W.3d at 250; *Atmos Energy*, 127 S.W.3d at 859–60.

Because the Utilities have failed to establish a justiciable controversy, we sustain the Commission's first issue as to ripeness. We therefore do not reach the Commission's second issue as to the merits of the trial court's judgment. *See* Tex. R. App. P. 47.1 (appellate court opinions

should be as "brief as practicable"), 47.4 (memorandum opinions should be "no longer than necessary to advise the parties of the court's decision and the basic reasons for it").

## CONCLUSION

Having concluded that these cases are not fit for judicial decision and that denial of the requested relief will not constitute a hardship on the Utilities, we reverse the judgment and dismiss the Utilities' claims.

_____
Melissa Goodwin, Justice

Before Justices Puryear, Goodwin, and Field

Reversed and Dismissed

Filed:   August 14, 2014

11